# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ABINGDON DIVISION

| | |
|---|---|
| **MISTY FAULKNER,** | )<br>) |
| Plaintiff, | ) Case No. 1:14CV00081<br>)<br>) |
| v. | ) **OPINION AND ORDER**<br>) |
| **RICHARD DILLON, ET AL.,** | ) By: James P. Jones<br>) United States District Judge<br>) |
| Defendants. | ) |

*Melvin E. Williams and Micah D. Wright, Mel Williams PLC, Roanoke, Virginia, for Plaintiff; Joan C. McKenna, LeClairRyan, a Professional Corporation, Richmond, Virginia, for Defendants.*

In this diversity action, the plaintiff asserts various state law claims against her former employer and its individual owner and sole officer. The defendants have moved to dismiss the plaintiff's wrongful discharge and intentional infliction of emotional distress claims pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, I will deny the defendants' Motion to Dismiss.

I.

The following are the essential facts as alleged in the plaintiff's Complaint, which I must accept as true for the purposes of the defendants' Motion to Dismiss. *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

The plaintiff Misty Faulkner worked for defendant Bluefield Cleaners, Inc. ("Bluefield Cleaners"), located in Bluefield, Virginia, for approximately thirteen years. Her primary job was to press and iron clothes. The defendant Richard Dillon is the owner and sole officer of Bluefield Cleaners. The events alleged in the Complaint occurred during the course of Faulkner's employment at Bluefield Cleaners.

Around Christmas of 2012, Dillon allegedly began to repeatedly solicit Faulkner for sexual favors and a sexual relationship in exchange for favorable treatment. His actions included offering Faulkner money for sexual acts. Among other allegations, Faulkner asserts in the Complaint that "[a]t times Dillon would place his hands on [her], to include: . . . [r]epeatedly pinching [her] on her buttocks; . . . [r]epeatedly forcing [her] to accept hugs from him, and lingering on her when giving the hugs; and . . . [r]epeatedly rubbing her back." (Compl. ¶ 15, ECF No. 1.) On one occasion in August or September 2013, Faulkner alleges that Dillon attempted to forcibly kiss and hug her when he found her alone in a break room.

On another occasion, Faulkner alleges that Dillon offered her $500 if she would "do a little something for him once or twice a month," which she understood to mean sexual acts. (*Id.* ¶¶ 21, 22.) Similar events are alleged by Faulkner that involved Dillon placing cash on an ironing board where Faulkner was working. In

these instances, Faulkner characterizes Dillon's actions as his attempts to exchange money for sexual acts.

Faulkner also describes numerous notes from Dillon in which he made the following statements, among others:

(1) "Where [sic] you want to speak or not you can make eye contact without getting into trouble";

(2) "We can meet Sat [sic] let me know what time";

(3) "I Noticed [sic] Look Good";

(4) "Next payday when can we get together?";

(5) "<u>Don't give up on us</u> and <u>I want [sic] either</u> [sic] If you have a problem, let me know [sic] write me a note anytime";

(6) "How much longer do I have to wait [sic] you are killing me";

(7) "[My wife] is leaving [sic] I can meet you at mom's this evening [sic] let me know";

(8) "Do you know how hard it is for me not to grab you up in my arms?"; and

(9) "Is [sic] the shorts the one I got [sic] If so, they fit perfect."

(*Id.* ¶ 28.)

Faulkner asserts that she never gave in to Dillon's advances or consented to him touching her. In fact, Faulkner alleges in the Complaint that she told Dillon to "leave her alone" on several occasions. (*Id.* ¶ 33.) At one point, Faulkner even stated that she would go to a lawyer if he did not stop. In response, Faulkner

alleges that Dillon told her that no one would believe her because she was a drug addict and felon.

As a result of Dillon's behavior and treatment of Faulkner, she alleges that she "was distraught, experienced extreme distress, suffered nightmares and panic attacks, and has contemplated suicide." (*Id.* ¶ 35.) Faulkner also alleges that she feared that if she did not give into Dillon that he would retaliate against her, including terminating her employment. She asserts that "[d]ue to the extreme distress, nightmares and panic attacks, and contemplation of suicide caused by Dillon's behavior, [she] sought professional counseling, and she refrained from engaging in intimate relations with her husband." (*Id.* ¶ 36.) Faulkner alleges that "Dillon's conduct continued until [she] became so distraught that she feared she would suffer an emotional breakdown." (*Id.* ¶ 37.) She also asserts that "[e]ach day when preparing to go to work she would become physically ill, to include nausea and vomiting." (*Id.* ¶ 38.)

Faulkner's employment at Bluefield Cleaners ended when she notified Dillon — through her attorney — that she would not be returning to work. According to the Complaint, Faulkner could not continue to work in the environment created by Dillon, because it would have resulted in her suffering a "nervous breakdown." (*Id.* ¶ 40.)

Based on these allegations, the plaintiff has asserted three state law causes of action against the defendants: assault and battery, wrongful discharge, and intentional infliction of emotional distress.[1] The defendants' Motion to Dismiss is limited to the latter two claims. More specifically, the defendants contend that the plaintiff "has failed to plead all of the necessary elements of a claim for wrongful discharge under Virginia law and has failed to plead sufficient facts to support a claim for intentional infliction of emotional distress under Virginia law." (Defs.' Mot. to Dismiss ¶ 2, ECF No. 6.) The Motion to Dismiss has been fully briefed and is ripe for decision.[2]

## II.

"A motion filed under Rule 12(b)(6) challenges the legal sufficiency of a complaint," which in this case is "measured by whether it meets the standards for a pleading stated in Rule 8 (providing general rules of pleading) . . . and Rule 12(b)(6) (requiring that a complaint state a claim upon which relief can be granted)." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). The Supreme Court has held that "[t]o survive a motion to dismiss, a complaint must contain

---

[1] Jurisdiction of this court exists pursuant to diversity of citizenship and amount in controversy. *See* 28 U.S.C. § 1332(a).

[2] I will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not significantly aid the decisional process.

-5-

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This standard requires a plaintiff to demonstrate more than "a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a pleading that merely offers "labels and conclusions," or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Similarly, "a complaint [will not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). When ruling on a motion to dismiss, the court must accept "as true all well-pleaded allegations and view the complaint in the light most favorable to the plaintiff." *Philips*, 572 F.3d at 180.

III.

A. Wrongful Termination and Constructive Discharge.

The defendants' first argument is that the plaintiff has failed to allege all of the required elements for a wrongful discharge claim under Virginia law. Specifically, the defendants point out that the facts alleged show that they did not

-6-

terminate or discharge Faulkner, because she resigned. The defendants argue that the plaintiff's theory of constructive discharge — that she was forced to resign as a result of the conditions of her employment — has not been recognized by the Supreme Court of Virginia as a basis for asserting a claim for wrongful discharge.

I agree that the Supreme Court of Virginia has not yet ruled on the issue of constructive discharge as it relates to a claim for wrongful termination by an at-will employee. It is therefore the duty of this court to anticipate how Virginia's highest court would decide this question. *See Liberty Mut. Ins. Co. v. Triangle Indus., Inc.*, 957 F.2d 1153, 1156 (4th Cir. 1992). As stated by the Fourth Circuit, to forecast a decision of the state's highest court, a court may consider: "canons of construction, restatements of the law and treatises[,] . . . recent pronouncements of general rules or policies by the state's highest court, . . . well considered dicta, . . . [and] [d]ecisions of the state's trial courts." *See id.*

As an initial matter, I note that district court decisions in Virginia are split over whether constructive discharge is recognized under Virginia law. *Compare Michael v. Sentara Health Sys.*, 939 F. Supp. 1220, 1232 (E.D. Va. 1996) (rejecting constructive discharge), *Gastyne v. Entrust, Inc.*, No. 1:10cv271 (JCC), 2010 WL 3418235, at *11 (E.D. Va. Aug. 24, 2010) (same), *and Gordon v. ArmorGroup N. Am., Inc.*, No. 1:10cv002 (JCC), 2010 WL 3418219, at *4 (E.D. Va. Aug. 27, 2010) (same), *with Wynne v. Birach*, No. 1:09cv15, 2009 WL

3672119, at *4 (E.D. Va. Nov. 3, 2009) (recognizing constructive discharge), *and Johnson v. Paramont Mfg., LLC*, No. 1:05CV00079, 2006 WL 2711830, at *6 (W.D. Va. Sept. 21, 2006) (same). In these rulings, the decision is often determined upon whether constructive discharge is viewed as a permissible extension of the recognized public policy exceptions to Virginia's employment-at-will doctrine. *See, e.g.*, *Johnson*, 2006 WL 2711830, at *5-6.

The Fourth Circuit took a similar approach in its nonprecedential decision in *Hairston v. Multi-Channel TV Cable Co.*, No. 95-2363, 1996 WL 119916 (4th Cir. Mar. 19, 1996) (unpublished).[3] In that case, the Fourth Circuit stated that "no Virginia court" had yet expanded any recognized exception to the employment-at-will doctrine "to a claim of constructive discharge." *Id.* at *2; *see also Grier v. Titan Corp.*, Nos. 97-1167, 97-1168, 1997 WL 467510, at *1 n.1 (4th Cir. Aug. 15, 1997) (unpublished) (referencing conclusion reached in *Hairston*). The Fourth Circuit was clearly concerned with the risk that federal courts would extend state law beyond any point recognized by Virginia's highest court. *Hairston*, 1996 WL 119916, at *2. Since that time, however, significant numbers of Virginia trial courts — but still not Virginia's highest court — have recognized constructive discharge.

---

[3] Unpublished opinions are not binding precedent in the Fourth Circuit. *See Hogan v. Carter*, 85 F.3d 1113, 1118 (4th Cir. 1996) ("Under our own internal rules, unpublished opinions are not precedential.").

Under these circumstances, I find it useful to consider the extensive litigation of this issue in Virginia trial courts to anticipate how the Supreme Court of Virginia would rule on this issue. *See Md. Cas. Co. v. Burley*, 345 F.2d 138, 139 (4th Cir. 1965) (following state trial court decision in absence of state supreme court precedent where its decision appears consistent with existing law). It is true that Virginia state trial courts have reached different conclusions regarding this issue, but there is a large, and growing, line of decisions that recognize the viability of a constructive discharge claim under Virginia law. *See, e.g.*, *Epperson v. Dep't of Corr.*, 77 Va. Cir. 325, 2008 WL 8201380, at *5 (Va. Cir. Ct. 2008) (recognizing constructive discharge); *Padilla v. Silver Diner*, 63 Va. Cir. 50, 2003 WL 23538122, at *5 (Va. Cir. Ct. 2003) (same); *Peyton v. United S. Aluminum Prods., Inc.*, 49 Va. Cir. 187, 1999 WL 33729436, at *1 (Va. Cir. Ct. 1999) (same); *Gochenour v. Beasley*, 47 Va. Cir. 218, 1998 Lexis 304, *8-9 (Va. Cir. Ct. 1998) (same); *Johnson v. Behsudi*, 52 Va. Cir. 533, 1997 WL 33120363, at *4 (Va. Cir. Ct. 1997) (same); *Dowdy v. Bower*, 37 Va. Cir. 432, 1995 WL 17044489, *3–4 (Va. Cir. Ct. 1995) (same); *Molina v. Summer Consultants, Inc.*, No. 152715, 1996 WL 1065653, at *1 (Va. Cir. Ct. Dec. 9, 1996) (same). *But see Jones v. Prof'l Hospitality Res., Inc.*, 35 Va. Cir. 458, 1995 WL 17047429, at *3 (Va. Cir. Ct. 1995) (rejecting constructive discharge); *Wright v. Donnelly & Co.*, 28 Va. Cir. 185, 1992 WL 884695, at *2 (Va. Cir. Ct. 1992) (same). I find it particularly

Case 1:14-cv-00081-JPJ-PMS   Document 19   Filed 03/23/15   Page 9 of 17   Pageid#: 97

informative that the trial court in *Padilla* reevaluated its prior refusal to recognize constructive discharge in *Jones*, and reversed course in light of the fact that "several Virginia trial courts" had recognized constructive discharge after *Jones*. *Padilla*, 63 Va. Cir. 50, 2003 WL 23538122, at *5.

Based on this current development of state case law, I conclude that courts recognizing constructive discharge under Virginia law are more persuasive regarding the potential approach of the Supreme Court of Virginia.[4] *See* 8 John Bourdeau et al., *Federal Procedure, Lawyers Edition* § 20:635 (noting that state trial court decisions are particularly useful "if there is a line of decisions reaching the same result"). This conclusion is also supported by the trend in other states. 1 Paul H. Tobias, *Litigating Wrongful Discharge Claims* § 7:63 ("The majority of the state courts that have addressed the issue of constructive discharge have acknowledged the validity of the doctrine in a variety of employment cases.").

---

[4] I also find it interesting that in *Lockhart v. Commonwealth Education Systems Corp.*, 439 S.E.2d 328 (Va. 1994), one of the consolidated cases on appeal involved an unequivocal assertion of constructive discharge at the trial court level. *See Wright*, 1992 WL 884695, at *2 ("[The plaintiff] alleges that she resigned her employment, but that it amounted to a constructive discharge."). In *Lockhart*, however, constructive discharge was not referenced and the facts were summarized in a way that implied, but did not confirm, an actual termination by the plaintiff's employer. 439 S.E.2d at 330. The significance of this is debatable. *See Gordon v. ArmorGroup N. Am., Inc.*, No. 1:10cv002 (JCC), 2010 WL 4272979, at *2 (E.D. Va. Oct. 19, 2010); *Gochenour*, 47 Va. Cir. at 221; Paul G. Beers, *Employment Law*, 30 U. Rich. L. Rev. 1373, 1386 n.73 (1996). However, I note that the trial court's factual conclusion — that the plaintiff resigned — was not a ground for reversal in *Lockhart*.

As defined by one Virginia trial court, "[t]o establish constructive discharge, a plaintiff must show that the termination was in violation of 'clear and unequivocal public policy of this Commonwealth, that no person should have to suffer such indignities,' and that the employer's actions were deliberate and created intolerable working conditions." *Padilla*, 2003 WL 23538122, at *5 (citation omitted). The plaintiff alleges a form of gender discrimination — sexual harassment — that has been recognized by the Supreme Court of Virginia as a public policy exception to the employment at-will doctrine.[5] *See Lockhart*, 439 S.E.2d at 329-31. I thus find that the Complaint adequately states a cause of action under Virginia law.

## B. Intentional Infliction of Emotional Distress.

The defendants' second argument is that the plaintiff has failed to plead sufficient facts to support a claim for intentional infliction of emotional distress under Virginia law. To prove a prima facie case of intentional infliction of emotional distress, a plaintiff must establish:

> One, the wrongdoer's conduct was intentional or reckless. . . . Two, the conduct was outrageous and intolerable in that it offends against the generally accepted standards of decency and morality. This

---

[5] Faulkner also alleges various attempts by Dillon to have her engage in criminal activities. As stated by the Supreme Court of Virginia, "we have recognized a cause of action for wrongful discharge where the discharge was based on the employee's refusal to engage in a criminal act." *Rowan v. Tractor Supply Co.*, 559 S.E.2d 709, 711 (Va. 2002). Without deciding this issue, I note that this may also be a basis for Faulkner's wrongful termination claim. *See Johnson*, 2006 WL 2711830, at *6.

-11-

Case 1:14-cv-00081-JPJ-PMS   Document 19   Filed 03/23/15   Page 11 of 17   Pageid#: 99

> requirement is aimed at limiting frivolous suits and avoiding litigation in situations where only bad manners and mere hurt feelings are involved. Three, there was a causal connection between the wrongdoer's conduct and the emotional distress. Four, the emotional distress was severe.

*Womack v. Eldridge*, 210 S.E.2d 145, 148 (Va. 1974). The defendants contend that the plaintiff has failed to plead sufficient facts to establish the second and fourth elements of outrageous and intolerable conduct and severe emotional distress.

As an initial matter, the defendants assert that the plaintiff "must allege all facts necessary to establish a cause of action" for intentional infliction of emotional distress to survive a motion to dismiss. (Defs.' Mem. of Law 7, ECF No. 7.) For example, as stated by the Supreme Court of Virginia, "in contrast to a claim of negligence, a plaintiff alleging a claim for intentional infliction of emotional distress must allege in her motion for judgment all facts necessary to establish the cause of action in order to withstand challenge on demurrer." *Almy v. Grisham*, 639 S.E.2d 182, 187 (Va. 2007). However, the procedural pleading requirements of Virginia state courts do not apply in this court. *See Fuller v. Aliff*, 990 F. Supp. 2d 576, 580 (E.D. Va. 2013).

As stated by one court,

> unlike in Virginia, which requires a plaintiff to plead "with the requisite degree of specificity" all facts that are necessary to establish his claim, a complaint in federal court need only provide "a short and

plain statement of the claim showing that the pleader is entitled to relief" under federal pleading rules.

*Vaile v. Willick*, No. 6:07cv000111, 2008 WL 204477, at *4 (W.D. Va. Jan. 24, 2008) (citation omitted). In other words, the plaintiff's pleadings, accepted as true, must "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fuller*, 990 F. Supp. 2d at 581 (internal quotation marks and citations omitted). As a result, substantive claims for intentional infliction of emotional distress under Virginia law "need not be pled [in federal court] with the degree of specificity required by Virginia courts." *Nelson v. Green*, No. 3:06-cv-00070, 2014 WL 131055, at *14 (W.D. Va. Jan. 14, 2014) (internal quotation marks and citation omitted).

The Supreme Court of Virginia has stated "that the term 'outrageous' does not objectively describe particular acts but instead represents an evaluation of behavior." *Almy*, 639 S.E.2d at 187 (citation omitted). The determining factor is whether "reasonable persons could view the conduct alleged, if proved, as being 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Id.* (citations omitted). More generally, "'the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"'" *Paroline v. Unisys Corp.*, 879 F.2d 100, 112 (4th Cir. 1989) (quoting Restatement

-13-

(Second) of Torts § 46 cmt. d), *vacated in part on other grounds*, 900 F.2d 27 (4th Cir. 1990). For purposes of a motion to dismiss, "[w]hen reasonable persons could view alleged conduct in this manner and the other elements of the tort are properly pleaded, the controversy must be resolved at a trial on the merits of the claim, rather than by a circuit court on demurrer." *Almy*, 639 S.E.2d at 187.

In this case, Faulkner alleges an extensive course of conduct by Dillon that includes his solicitation of sexual favors; offers of money for sexual acts; repeated and unwanted physical conduct, including pinching her buttocks, lingering hugs, and rubbing her back; and a series of notes affirming his advances and solicitations. Faulkner's allegations, in short, describe a pervasive course of sexual harassment by Dillon.

The Fourth Circuit has acknowledged that under some circumstances, "sexual harassment may give rise to a claim for intentional infliction of emotional distress." *Paroline*, 879 F.2d at 113. It has also concluded, however, that a mere course of sexually suggestive comments and inappropriate touching is not sufficiently outrageous under Virginia law. *Id.* at 103; *see also Glover v. Oppleman*, 178 F. Supp. 2d 622, 627–29 (W.D. Va. 2001). Rather, more egregious behavior is required in order to establish liability.

For example, the Fourth Circuit in *Swentek v. USAIR, Inc.*, 830 F.2d 552 (4th Cir. 1987), concluded that a legitimate claim existed under Virginia law where:

> [The plaintiff] alleged that for several years [the defendant] seized every opportunity to upset her with sexually abusive language and conduct. According to [the plaintiff], he made repeated reference to her private parts, sought her out in airports and hotels in order to make obscene comments, fell to his knees in a sexually suggestive way when they first met, dropped his pants in her presence and engaged his friends in sexually molesting behavior.

830 F.2d at 562. Similarly, a federal district court found that physical contact involving a defendant placing his hand underneath the plaintiff's dress to grab her buttock and an attempt to grab her breast were sufficient to survive summary judgment. *Speight v. Albano Cleaners, Inc.*, 21 F. Supp. 2d 560, 565 (E.D. Va. 1998). These cases, and others cited by the parties, describe a spectrum, but not a threshold, of behavior that may trigger liability for intentional inflection of emotional harm. I find that the plaintiff's allegations of her employer's behavior are sufficient to survive the defendant's Motion to Dismiss.

Regarding the severe emotional distress element, "liability arises only when the emotional distress is extreme, and only where the distress inflicted is so severe that no reasonable person could be expected to endure it." *Russo v. White*, 400 S.E.2d 160, 163 (Va. 1991). As noted by other courts, this element is difficult to satisfy. *See Michael*, 939 F. Supp. at 1233; *Fuller*, 990 F. Supp. 2d at 581. For

-15-

Case 1:14-cv-00081-JPJ-PMS   Document 19   Filed 03/23/15   Page 15 of 17   Pageid#: 103

example, in *Russo*, the Supreme Court of Virginia affirmed the dismissal of an action in which the plaintiff complained of nervousness, sleep deprivation, stress and "its physical symptoms," withdrawal from activities, and the inability to concentrate at work. 400 S.E.2d at 163. In that case, the *Russo* court noted that the plaintiff did not allege "that she had any objective physical injury caused by the stress, that she sought medical attention, that she was confined at home or in a hospital, or that she lost income." *Id.* As a result, the plaintiff in *Russo* failed to allege sufficient facts to establish the severity of the emotional distress experienced. *Id.*

As previously stated, Faulkner alleges that she "was distraught, experienced extreme distress, suffered nightmares and panic attacks, and has contemplated suicide because of Dillon's behavior toward her." (Compl. ¶ 35, ECF No. 1.) She also alleges that these experiences caused her to seek "professional counseling" and that she refrained from "intimate relations with her husband." (*Id.* ¶ 36.) Faulkner also asserts that she feared suffering an emotional breakdown. Moreover, she alleges that "[e]ach day when preparing to go to work she would become physically ill, to include nausea and vomiting." (*Id.* ¶ 38.)

I find that the plaintiff's Complaint adequately pleads facts sufficient to support the severity of her emotional distress. In particular, the physical nature of

-16-

the sexual harassment alleged and the impact it had on the plaintiff's marriage and her mental and physical wellbeing support her claim.

Of course, I make no prediction as to the ultimate outcome of the case, or if indeed the plaintiff's action will be able to survive a future motion for summary judgment after the facts have been more fully developed. I only hold that she has pleaded a plausible claim of intentional inflection of emotional distress.

IV.

For these reasons, it is **ORDERED** that Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 6) is DENIED.

ENTER: March 23, 2015

/s/ James P. Jones
United States District Judge